# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RANDAL D. MITCHELL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00090 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **THE GUARDIAN LIFE INSURANCE** | ) | By: James P. Jones |
| **COMPANY OF AMERICA,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Carletta J. Faletti, Faletti Law Firm, Richlands, Virginia, for Plaintiff. Bruce M. Steen, McGuireWoods LLP, Charlotte, North Carolina, for Defendant.*

In this case, the plaintiff seeks a judgment that he is entitled to long-term disability benefits pursuant to an ERISA plan sponsored by his employer. Because I find that the plan administrator did not abuse its discretion in determining that the plaintiff had a pre-existing condition rendering him ineligible for long-term benefits under the plan, I will grant summary judgment in favor of the defendant.

I

In this case arising under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1132(a)(1)(B) (West 2009), the plaintiff, Randal D. Mitchell, complains of the denial of his claim for long-term disability benefits by the defendant, The Guardian Life Insurance

Company of America ("Guardian"), on the basis that Mitchell's claim was barred by the pre-existing condition provision of the benefits plan. This court has subject-matter jurisdiction pursuant to 29 U.S.C.A. § 1132(e)(1) (West 2009) and venue is uncontested. The parties have briefed and orally argued their positions and the case is ripe for decision.

The facts of the case are substantially undisputed and are contained in the administrative record. Mitchell was employed as a Master HVAC Installer for Parrish Services, Inc. As a benefit of his employment, Mitchell participated in an employee welfare benefit plan, Guardian Group Plan #444607 (the "Plan"), which provided long-term disability benefits to eligible plan participants. The Plan was maintained pursuant to and governed by ERISA. Mitchell began his employment with Parrish Services on October 15, 2008. He became a participant under the Plan on January 1, 2009.[1] Mitchell stopped working on December 23, 2009, due to his claimed disability.

The Plan states that "Guardian is the Claims Fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of the plan

---

[1] Guardian submitted the administrative record in this case, consisting of copies of the Plan and the Summary Plan Description ("SPD"), as well as Guardian's internal file on Mitchell's claim, including correspondence and medical records. Guardian filed these documents as multiple exhibits to the Declaration of Richard Fisher, an Adjudication and Procedural Specialist with Guardian, docketed at ECF 9. In citing the administrative record, Exhibit 1 (the Plan) and Exhibit 2 (the SPD) will be referred to jointly as "Plan." Exhibit 3, the remainder of the record, will be referred to as "Mitchell." Citations will also include the ECF docket numbers and the relevant Bates-marked page numbers.

with respect to claims." (ECF 9-3, Plan 0177.) Guardian both administered the Plan and had the sole authority to grant or deny benefits to applicants.

The Plan provides that if a participant works less than 12 consecutive months after he becomes a participant in the Plan, he is not entitled to long-term disability benefits if the alleged disability is due to a pre-existing condition. The Plan defines a pre-existing condition as "a sickness or injury, including all related conditions and complications, for which, in the look back period, a covered person: (a) received advice or treatment from a doctor; (b) takes prescribed drugs; or (c) received other medical care or treatment, including consultation with a doctor." (ECF 9-2, Plan 0084; ECF 9-3, Plan 0168.) The look-back period is defined as the 12 months prior to the date on which the participant becomes covered under the Plan.

On October 13, 2008, just before starting work at Parrish Services, Mitchell went to see Angela Harrison, a nurse practitioner, as a new patient. Harrison's notes indicate that he presented with low back pain and had tenderness in the lumbar sacral spine. Harrison assessed him with low back pain. Mitchell underwent an X ray of his spine on October 14, 2008, for his "low back pain radiating dow[n] left leg." (ECF 9-4, Mitchell 0162.) The findings were: "No acute or focal bone changes are seen. Arthritic changes of facet joints at L5-S1 level is noted. Mild degenerative changes of L5-S1 disc is also noted. Alignment

-3-

Case 1:11-cv-00090-JPJ-PMS   Document 16   Filed 07/23/12   Page 3 of 13   Pageid#: 961

of the vertebrae are normal." (*Id.*) Mitchell was treated with an injection and Lidocaine patches for the pain.

Another X ray of Mitchell while he was working for Parrish Services in August of 2009 showed "mild dextroscoliosis of the lumbar spine centered along the level of L3-4 with complete loss of disc height on the left aspect of the vertebral bodies." (*Id.* at 0171.) Mitchell stopped working that December. An MRI in February 2010 indicated degenerative changes at L3-4, L4-5, and L5-S1, which caused tenderness in the lower lumbar region around L4 and L5.

After stopping work, Mitchell applied for and received short-term disability benefits through Parrish Services' Guardian Short Term Disability Plan. On March 16, 2010, Guardian invited Mitchell to apply for long-term disability benefits. Guardian notified Mitchell that "a pre-existing investigation may be necessary." (ECF 9-5, Mitchell 0463) Mitchell applied for long-term disability benefits on March 31, 2010. Because Mitchell had stopped working before the expiration of 12 consecutive months after his coverage began on January 1, 2009, the look-back period applicable to Mitchell's application was the 12-month period prior to that date.

By letter dated July 1, 2010, Guardian informed Mitchell that his claim for long-term disability benefits had been denied "because the condition for which [he was] claiming disability is a pre-existing condition." (*Id.* at 0607.) Guardian

pointed to the 2008 medical records as establishing that during the look-back period, Mitchell had received advice, treatment, and medication for low back pain, which was his claimed disabling condition. Guardian notified Mitchell of his internal appeal rights under the Plan, invited him to submit medical records or other information necessary to support his appeal, and described his rights under ERISA.

Mitchell administratively appealed the denial of his claim for long-term disability benefits on August 4, 2011. He argued that his lower back pain was not a pre-existing condition because the 2008 examination showed degenerative changes to L5-S1 and indicated the other vertebrae were normal, whereas the 2009 diagnosis of the problems leading to his disability concerned the L3-L4 vertebrae.

On September 21, 2010, Guardian commissioned a multi-disciplinary (neurosurgery and orthopedic) review of Mitchell's claim. Michael J. Chmell, M.D., a board-certified orthopedic surgeon, was engaged to perform an orthopedic review of Mitchell's claim. Eugene Collins, M.D., a board-certified neurosurgeon, was commissioned to perform a neurological review of Mitchell's claim.

Upon reviewing Mitchell's file, Dr. Chmell concluded:

> It is evident from the medical record based upon the x-ray report on 10/14/08, as well as Angela Harrison's notes from 10/13/08 as well as the letter from Phyllis Mitchell 10/27/08 that this claimant has been evaluated and treated for a history of low back pain . . . during the dates in question of 01/01/08 through 12/31/08.

-5-

Case 1:11-cv-00090-JPJ-PMS   Document 16   Filed 07/23/12   Page 5 of 13   Pageid#: 963

(*Id.* at 0555-56.) Dr. Chmell certified that he had no direct or indirect financial incentive for a particular determination in this case.

Dr. Collins also review Mitchell's file. He noted that Mitchell was seen on October 13, 2008, for lower back pain, was x-rayed for that indication on October 14, 2008, and was treated for it with an injection and Lidocaine patches. Dr. Collins opined that Mitchell's 2008 lower back pain radiating down the leg to the knee could have been caused by an L3 and/or L4 radiculopathy at that time. Dr. Collins concluded:

> There is evidence that the claimant received advice or treatment concerning his low back and left leg pain within the period noted above of 01/01/08 through 12/31/08. It should be noted that the claimant saw his physician for low back pain on 10/13/08. The claimant was sent for x-rays with the indication being "low back pain radiating down the left leg." The claimant was also treated for such.

(*Id*. at 0571-72.) In addition, Dr. Collins states that Mitchell's "records are consistent that the claimant was treated for a preexisting condition from 01/01/08 through 12/31/08 specifically beginning in October 2008." (*Id.* at 0575.) Dr. Collins certified that he had no direct or indirect financial incentive for a particular determination in this case.

Based upon this independent review, Guardian concluded that Mitchell's disabling lower back condition was a pre-existing condition and denied his administrative appeal on November 8, 2010. Guardian notified Mitchell that he

-6-

Case 1:11-cv-00090-JPJ-PMS   Document 16   Filed 07/23/12   Page 6 of 13   Pageid#: 964

had exhausted his Plan remedies and had the right to bring a civil action under ERISA challenging the final benefit decision. This case followed.

II

ERISA permits a participant or beneficiary to bring a civil action to recover benefits due to him under the provisions of his employee benefit plan. 29 U.S.C.A. § 1132(a)(1)(B). Where a plan gives discretionary authority to an administrator or fiduciary to determine eligibility for benefits or to construe the language of the plan, courts will review the administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In this case, the Plan states that "Guardian is the Claims Fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of the *plan* with respect to claims." (ECF 9-3, Plan 0177.) The parties agree that the Plan vests discretion in Guardian.

Under the abuse of discretion standard, the court will not disturb a plan administrator's reasonable decision, even if the court would have come to a contrary conclusion independently. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629 (4th Cir. 2010). The court may not substitute its judgment for that of the plan administrator. *Id.* An administrator's decision is reasonable if it results from "a 'deliberate, principled reasoning process' and [is] supported by substantial

evidence." *Id.* at 630 (quoting *Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long-Term Disability Plan*, 509 F.3d 644, 651 (4th Cir. 2007)).

The Fourth Circuit has set forth eight nonexclusive factors for courts to consider when reviewing the reasonableness of a plan administrator's decision:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Williams*, 609 F.3d at 630 (citing *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000)).

The Plan's determination that Mitchell's lower back pain was a pre-existing condition is well supported and entitled to deference. The most significant factor in this case is the language of the Plan. Because Mitchell had worked less than 12 months after he was first eligible under the Plan, Guardian was required to determine whether his disabling condition was a pre-existing condition. The Plan's definition of pre-existing condition is very broad, including "*all related conditions and complications*, for which, in the look back period, a covered person: (a) receives advice or treatment from a doctor; (b) takes prescribed drugs; or (c) receives other medical care or treatment, including consultation with a doctor."

-8-

(ECF 9-2, Plan 0084 (emphasis added).) Under this definition, degenerative changes to the lower back, whether at L5-S1 or L3-L4, may be related conditions and complications satisfying the pre-existing condition exclusion. *See Hanley v. Emps. of Agency Rent-a-Car Hospitalization Ass'n*, Civ. A. No. HAR 94-531, 1994 WL 548776, at *3 (D. Md. Sept. 29, 1994) (finding that under plan's broad pre-existing condition definition, the exclusion in not limited "to conditions that are 'directly caused' by a pre-existing ailment").

In addition, Guardian's conclusion that this was a pre-existing condition is supported by substantial evidence (*Booth* factor 3). Mitchell sought treatment for lower back pain in October 2008 and was treated with an injection and Lidocaine patches. He again claimed lower back pain as a condition starting in August 2009. Although in 2008 the condition seemed limited to L5-S1, in 2009 it became evident that L3 and L4 were also degenerating and ultimately were the most significant sources of pain. This conclusion is supported by the MRI in February 2010, which indicated degenerative changes at L3-4, L4-5, and L5-S1, causing tenderness in the lower lumbar region around L4 and L5. Regardless, all of these problems were part of the *condition* that caused him to stop working, i.e., his lower back pain. Both independent medical reviewers so concluded and their

conclusions, in addition to the objective medical evidence, support Guardian's denial of benefits.[2]

To the extent applicable, the other *Booth* factors also support Guardian's determination of Mitchell's claim. One of the purposes and goals of the Plan is to provide benefits to those who are entitled to them under the terms of the Plan. Ensuring that the terms of the Plan, including the exclusions, are properly interpreted and applied in a uniform fashion furthers that goal. The decision-making process engaged in by the Plan was reasoned and deliberate. Mitchell was informed of his obligations and rights under the Plan and was given the opportunity to appeal and submit additional information as he saw necessary. At the appeal level, Guardian engaged two independent medical consultants to review the record and opine on the proper determination. Further, Mitchell has not alleged, and the record does not show, any violations of ERISA's procedural or substantive requirements.

Mitchell argues that Guardian has a conflict of interest in assessing his claim for long-term disability benefits because it acted as both the administrator and

---

[2] The fact that the independent medical reviewer's conclusions that Mitchell's lower back pain was a pre-existing condition were different from that of Harrison, one of Mitchell's treatment providers, does not make the Plan's denial of benefits an abuse of discretion. *See Booth*, 201 F.3d at 345-46 ("[I]t was within the discretion of the Administrative Committee – indeed it was the duty of that body – to resolve the conflicts, and . . . 'it is not an abuse of discretion for a plan fiduciary to deny . . . benefits where conflicting medical reports were presented.'" (quoting *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir. 1999)).

underwriter of the Plan.  While it is undoubtedly true that Guardian does have a structural conflict of interest because of its dual role of evaluating claims for benefits and paying benefits, *Williams*, 609 F.3d at 632, there is no indication that this conflict of interest caused Guardian to be inherently biased in making its decision.[3]

Mitchell argues that the conflict of interest has so shaded Guardian's review of his case that it resulted in an abuse of discretion.  To support this argument, Mitchell references what he views as "procedural errors" occurring during Guardian's review of his claim.  First, he notes that Guardian initially informed an evaluating physician, Melvin Heiman, M.D., that Mitchell worked as a shipping clerk and based upon this erroneous information, Dr. Heiman determined Mitchell was not disabled.  This error has nothing to do with Guardian's conclusion that Mitchell's low back pain was an ineligible pre-existing condition.  Dr. Heiman was assessing Mitchell's disability based upon his right knee problems.  Although Mitchell's claim for benefits were initially based upon both back and knee problems, it was ultimately concerned only with his back problems and thus Dr. Heiman's opinion on the disabling effect of his knee problems was irrelevant.

---

[3] Mitchell contends that denying his long-term benefits saved Guardian $221,435 over the years (Compl. ¶ 35), and because of this large sum it can be assumed that Guardian made special efforts to find a way to reject his claim.  There is no evidence of such special efforts; moreover, we do not know whether Mitchell's claim was necessarily large in comparison with all of the other disability claims that Guardian is obligated to pay.

-11-

Although Dr. Heiman's opinion did have an effect on Guardian's initial decision to deny benefits, on appeal the reviewing physicians did not rely upon Dr. Heiman's opinion based on the erroneous information. Dr. Chmell noted that "Dr. Heiman states that he does not think either knee would hold up to his job requirements." (ECF 9-5, Mitchell 0553.) Dr. Collins did not address or rely upon Dr. Heiman's opinion at all.

Mitchell also argues that Dr. Chmell's emphatic opinion that Nurse Practitioner Harrison's assessments of Mitchell's condition and ability to work were less than reliable are further evidence of Guardian's conflict of interest. Dr. Chmell noted several issues with Harrison's assessments. First, he noted that Harrison gave Mitchell permission slips to be off from work that were not supported by any objective data and, in his opinion, were arbitrary. (*Id*. at 0548, 0551, 0552.) Second, he noted that her letter to Guardian of July 28, 2010, in which Harrison claimed that Mitchell's back and knee pain in 2008 were distinct issues which were resolved and not long-term problems, was unsupported by her treatment notes. (*Id*. 0558.) He further contended that Harrison's attempt to retrospectively correct those treatment notes to conform to Mitchell's disability claim was unjustified. (*Id.*)

Dr. Chmell's statements are not without support in the record. The fact that Dr. Chmell questioned the conclusions of Mitchell's treatment provider is not

-12-

Case 1:11-cv-00090-JPJ-PMS   Document 16   Filed 07/23/12   Page 12 of 13   Pageid#: 970

evidence of self-serving where the questions raised are the reasonable results of an independent expert review of the record.[4]

III

Mitchell appears to be disabled (he has received a Social Security disability award) and it is truly unfortunate for him that he left work nine days before his anniversary in the Plan, which would have removed the pre-existing condition exclusion. Nevertheless, for the reasons set forth, I must find that Guardian's determination that Mitchell's lower back pain was a pre-existing condition excluding him from long-term disability benefits is unassailable and that summary judgment for Guardian is appropriate. A separate Judgment will be entered forthwith.

DATED: July 23, 2012

/s/ James P. Jones
United States District Judge

---

[4] Mitchell also asserts that Guardian included six pages of another individual's claim file when it sent Mitchell his own claim file in response to his request for all the information Guardian relied upon in reaching its final conclusion. Mitchell thus contends that the denial of his benefits was based, in part, upon another claimant's record. The six pages in question are not in the present administrative record and Mitchell himself has not submitted them or otherwise described their contents. There is thus no evidence supporting Mitchell's argument that Guardian's determination was based on someone else's information. It is pellucid that this was a simple clerical error.